IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY ROLLO BARKER,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRISTOPHER KEEZER,<br><br>        Defendant. | HON. JEROME B. SIMANDLE<br><br>Civil No. 08-1487 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Mr. Anthony Rollo Baker
#345984C/585864
Kintock Group, Bldg #1
50 Fenwick Street
Newark, NJ 07114
    Pro se Plaintiff

Eric L. Harrison, Esq.
METHFESSEL & WERBEL, ESQS.
3 Ethel Road, Suite 300
Edison, NJ 08818
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter is before the Court upon the motion for summary judgment of Defendant Detective Christopher Keezer ("Detective Keezer" or "Keezer") [Docket Item 57]. Defendant Keezer asks this Court to dismiss the claims of Plaintiff Rollo Anthony Barker ("Barker") on the grounds that he is entitled to qualified immunity. Plaintiff Barker, proceeding without a lawyer, seeks relief under 42 U.S.C. § 1983, alleging that Keezer employed excessive force in effectuating his arrest on April 13, 2006,

thereby violating Barker's Fourth Amendment rights [Docket Item 1].  For the reasons discussed herein, the Court will deny Defendant Keezer's motion for summary judgment.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On April 13, 2006, Barker led police on a high-speed chase through Roseland, Fairfield, Montville, and Pequannock, New Jersey, after the Roseland Police attempted to pull him over for speeding in a vehicle missing its front license plate.  (Roseland Incident Report, Def. Exh. A.)  Barker eventually abandoned his vehicle and proceeded to flee by foot, first into a wooded area adjacent to the highway and then into a residential neighborhood.  (Montville Investigative Report, Def. Exh. E at 2.)  While chasing Barker, Detective Keezer yelled for him to "stop" and identified himself as the police.  (Id. at 3.)  Keezer caught up to Barker and tackled him from behind, causing both men to fall to the pavement.  (Id.)

It is at this point that the parties' accounts of the events diverge.  In Keezer's version, Barker hit the ground face first and rolled over, flailing his arms and legs and swinging at Keezer.  (Id.)  Keezer claims that because of Barker's active resistance to arrest, he could initially handcuff only one of Barker's hands and was forced to subdue Barker by a single, closed-fist punch.  (Id.)  According to Barker, however, Detective Keezer "maliciously assaulted" him by "beating him

2

about his head and body" and "slamming his face on the blacktop repeatedly" <u>after</u> handcuffing Barker behind his back.[1]  (Pl.'s May 24, 2010 Aff.; Pl.'s Oct. 15, 2009 Opp'n at 7.)  Following the arrest, Barker was brought to the hospital where he was treated for a fractured nose, head trauma, multiple facial contusions and abrasions, and two broken front teeth.  (Medical Records, Pl.'s Oct. 15, 2009 Opp'n. Exh.)

On March 25, 2008, Barker filed a one-count complaint against Detective Keezer pursuant to 42 U.S.C. § 1983, alleging that Keezer employed excessive force during the arrest, and in doing so violated Barker's Fourth Amendment rights [Docket Item 1].  On August 18, 2009, Keezer filed the present motion for summary judgment [Docket Item 57].

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable [fact-finder] could

---

[1] Barker filed a sworn affidavit on May 24, 2010, stating that all facts alleged in his opposition to summary judgment were true [Docket Item 79].  For the purposes of this summary judgment motion, the Court will consider Barker's factual allegations made in his opposition for summary judgment to be incorporated into his admissible affidavit as evidence that may be considered on summary judgment.

3

return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is considered "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a finding of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, a court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the non-moving party's evidence 'is believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 255 (1986)). In the context of qualified immunity cases, this will usually require a court to adopt the plaintiff's version of the facts. Scott v. Harris, 550 U.S. 372, 378 (2007).

**B.   Qualified Immunity**

In moving for summary judgment, Detective Keezer argues that he is entitled to qualified immunity from Barker's claims. As an "accommodation of competing values," the doctrine of qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was "plainly incompetent or … knowingly violate[d] the law," while immunizing an officer who "made a reasonable mistake about the

4

legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted). The protection of qualified immunity, if appropriate, will apply regardless of "whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).

A defendant's entitlement to qualified immunity hinges on two considerations.[2] First, a court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," id. at 816 (citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. A court must then decide "whether the right that was [allegedly] violated was clearly established, or, in other

---

[2] While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 129 S.Ct. at 818, the qualified immunity standard followed a "rigid order of battle," Pearson, 129 S.Ct. at 817 (citation omitted), in which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson, 129 S.Ct. at 821.

5

words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).[3]

1. Deprivation of a Constitutional Right

The threshold question for a qualified immunity analysis is whether a reasonable fact-finder could conclude that the defendant deprived the plaintiff of a constitutional right.  One of the protections afforded by the Fourth Amendment is the right to be free from the use of excessive force by a law enforcement officer.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). In deciding whether the conduct at issue rises to the level of "excessive," a court must use an objective reasonableness standard rather than the "20/20 vision of hindsight," recognizing that police officers are often faced with split-second decisions

---

[3] In a motion for summary judgment, a defendant is only entitled to qualified immunity "if the Court can conclude, based on the undisputed facts in the record, that [d]efendant reasonably, though perhaps mistakenly, believed that [his] conduct was lawful in light of the clearly established law[.]" Mantz v. Chain, 239 F. Supp. 2d 486, 489 (D.N.J. 2002).  Summary judgment is not appropriate, however, if "the record compels the opposite conclusion or if there exist disputed issues of material fact relevant to the Court's evaluation of the 'objective reasonableness' of the Defendant['s] conduct." Id.

6

in "tense, uncertain, and rapidly evolving" situations.  Graham, 490 U.S. at 396-97.  As the Supreme Court has explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Id. at 396 (internal quotations and citations omitted).  Factors a court may consider include:

> (1) the severity of the instant crime;
> (2) the threat of immediate harm to the officers or others;
> (3) whether the suspect is attempting to flee or is actively resisting arrest;
> (4) the duration of the officer's action;
> (5) whether the action takes place in the context of effecting an arrest;
> (6) the possibility that the suspect may be armed;
> (7) the number of persons with whom the police officer must contend at one time.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

In the instant case, Barker maintains that his injuries cannot be attributed to a mere falling on the pavement, and instead were the result of a physical assault after Keezer had successfully subdued him.  More specifically, Barker claims that he was "maliciously beaten" when Detective Keezer beat him about the head and body and repeatedly slammed his head into the pavement after he had already been handcuffed behind his back and was lying on the ground.  In applying the relevant factors to these alleged circumstances, a reasonable fact-finder could conclude that Barker no longer posed a threat of immediate harm to Detective Keezer, and that it would have been impossible for Barker to flee the scene or resist arrest after he was already

handcuffed.  See Couden, 446 F.3d at 497 (finding excessive force as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time the force was used).  Therefore, a fact-finder, accepting Barker's version of the events as true, could conclude that Detective Keezer used excessive force in effectuating Barker's arrest and violated Barker's Fourth Amendment rights.

      2.    Clearly Established Right

Because a reasonable fact-finder could conclude that Detective Keezer's conduct deprived Barker of his Fourth Amendment right to be free from excessive force, the Court must now determine whether the alleged deprivation violated clearly established law.  See Safford Unified Sch. Dist. #1 v. Redding, 129 S.Ct. 2633, 2644 (2009) (granting qualified immunity to school officials where a strip search of a student was unconstitutional but governing law at the time of the incident was not sufficiently clear).  At the time of Barker's arrest in 2006, it was well established that an officer may not use wanton force against an arrestee who has already been restrained.  See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.").  Moreover, based on the factors set out in Graham and reiterated in Couden, a reasonable officer would

8

have known that inflicting serious bodily harm upon a suspect, after he no longer posed a risk of harm or flight, is both excessive and unconstitutional.  See Saucier, 533 U.S. at 202.[4]

In the context of the present motion for summary judgment, the question more narrowly becomes whether a reasonable officer would know that beating a restrained arrestee about the head and body, as well as repeatedly smashing his head into the pavement, is unlawful conduct.  The Court easily answers this question in the affirmative.  Adopting Barker's version of the events, as the Court must do on this motion for summary judgment, it would have been clear to a reasonable officer that a physical beating, post-arrest and without threat from the suspect, constitutes excessive force.  Such alleged conduct would appear to serve no purpose

---

[4] The New Jersey Attorney General's Use of Force Policy, followed by New Jersey law enforcement officers, is wholly consistent with the applicable case law as it also contemplates the use of force on an objective reasonableness standard:

> A law enforcement officer may use physical force or mechanical force when the officer reasonably believes it is immediately necessary at the time:
>
>     a.   to overcome resistance directed at the officer or others; or
>     b.   to protect the officer, or a third party, from unlawful force; or
>     c.   to protect property; or
>     d.   to effect other lawful objectives, such as to make an arrest.

http://www.state.nj.us/lps/dcj/agguide/useforce.htm.

other than to inflict bodily harm, and an objectively reasonable officer would have known that such conduct was unlawful.

Accordingly, Detective Keezer's motion for summary judgment on the basis of qualified immunity is denied.  The Court must resolve the material factual disputes in this case, and expresses no view of the merits nor any prediction whether Plaintiff is likely or unlikely to prove his case at trial.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment on the basis of qualified immunity is denied. The accompanying Order will be entered and the case will be set for Final Pretrial Conference or for trial.[5]

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:     **July 8, 2010**

---

[5] The Complaint seeks a non-jury trial and no jury demand appears in the Answer.  Therefore, the case will be tried to the Court without a jury.